case number 152178, Rosa C. Rodriguez et al. versus the United States et al. Good morning, and may it please the court. My name is Adam Charnas, and I represent the plaintiffs in this case. As the court knows, this case was brought by a class of federal workers in the so-called non-foreign areas of the United States, alleging or challenging the government's practice of abuses of calculating retirement and other benefits. Could I ask for your help in a couple of these exhaustion issues, which the regulations are byzantine and it's difficult to follow? Yes. But with respect to the non-discrimination claims, as I understand it, under 7702, in order for you to take those claims to the district court, even under your view, you'd have to have a decision which was appealable to the MSPB, correct? That is correct. For it to be a mixed case, one of the criteria is that one of the claims be appealable to the MSPB. Okay. So the problem I'm having is that with respect to OPM decisions, it's an unusual agency in  And why is your failure to seek reconsideration before OPM as to the non-discrimination claims a bar? Why isn't it a bar to having an appealable order? In other words, under the regulations, it's not a final order because you didn't seek reconsideration and get a final decision. Well, I think what the statute says here, 7702, says expressly that when the agency, the OPM EO office, does not make a ruling within 120 days, that we're entitled to go to court. So I think that that's the basis for us to file a civil action after the agency doesn't rule. It almost is. But you did have a letter from the agency saying, we've looked at this and we're bound by the statute, bound by the regulations, right? Well, the letter was out of the informal counseling process that preceded the filing of a formal complaint. We filed a formal complaint with the EO office of OPM and that was then transmitted to the Well, once you got the letter, why weren't you required as a matter of exhaustion to go back and ask for reconsideration so that you could get an appealable order to the MSPB before going to district court? Well, as I understand the regulations and the procedure, the letter authorized the plaintiffs to file a formal complaint. And that's what we did. I'm not aware of a requirement that we seek reconsideration of the final determination letter, which involved the informal counseling process, which is a prerequisite to filing the formal complaint. Well, not on the EO issue, but on the non-EO issues, there is a requirement in the OPM regulations that you seek reconsideration before you get a final order. Well, but here the OPM didn't do, I guess, you know, it seems to me to be nonsensical to require you to seek reconsideration of a non-decision. It's one thing if the agency, in response to the formal complaint, rejected it in the merits and gave reasons and to say, well, you have to go back and seek reconsideration and explain why the agency was wrong. That gives the agency another bite at the apple to potentially cure any oversights or mistakes, legal errors, factual errors. But here the agency did nothing. It ignored the formal complaint for about a year. Okay, I understand the position. Let me ask you about the district treatment claims. Yes. Under the regulations, the class complaint has to be specific about what the claims are. And that class complaint has to be initially filed with the agency EEO office. That would be here at the OPM office. And why, when we look at that complaint, if we don't find a district treatment allegation, you haven't exhausted your remedies, right? Well, I don't think that's right. Because this was a class complaint, it needed to be filed as well with the EEOC. And the district court refused, there's no question, I don't think, that we raised this district treatment in the filings with the EEOC. Yeah, but I don't know why that's sufficient because it seems to me that the regulations are pretty clear that your initial complaint to the agency has to raise the claims. Well, but the EEOC has adjudicatory authority in this case. The district court said, I'm not going to consider the filing with the EEOC because essentially it's a mail drop, a class complaint to ship there from the EEOC office of OPM and it doesn't have an adjudicatory or investigatory authority. And the district court simply was wrong in that respect. As we pointed out in our brief, the EEOC has authority to, in fact is required, to impanel a hearing officer, a discovery occurs at the EEOC and the EEOC is directed. Well, that may all be true, but the regulations say that you've got to raise your claim in the initial class complaint filed with the agency rather than the EEOC. Well, but I think that the question is whether the agency was put on notice and the EEOC were put on notice that the claim involved district treatment. Now, here I'll concede that the initial complaint that was filed with the EEO office was somewhat ambiguous about the nature of the claim and whether it included a district treatment claim. We say, we believe that it was sufficient under this court's precedent in cases like Fantini and like the Second Circuit's decision in Gomez. The filings to the EEOC themselves alleged at one point that said that the exclusionary rule discriminates and has a disparate adverse impact, making it clear that we thought there was something in addition to an adverse impact that they were complaining about. And we think that was made expressly clear in the EEOC filings a few months later. That may be, but that doesn't seem to me to satisfy the requirement of regulations that the initial complaint to the agency raised the issue. I understand, Your Honor. But I think the basic reason for exhaustion is to alert the agency that the claim is being made here. I think at best there was, or worse from our perspective, there was ambiguity in the EEO office filings that were clarified, I would say, by the EEOC filing later and alerted the agency that there was a disparate treatment claim as well as a disparate impact claim that the agency, that the EEO office should have investigated. Okay. I don't want to take up all your time. That's been helpful. And I know you want to talk about the safe harbor. But I have one of my own. Yes, sir. If you could just help me on this point. Do you have any named plaintiffs who the alleged discrimination occurred for the first time within 180 days of the filing? 180 days of the filing of the lawsuit? I don't, our position would be that yes, that every paycheck involves a calculation. Of course, that wasn't what I asked you. I'm sorry, then. I misunderstood your question. So it has to be a recent hire in order to get within the 180 days of the first time that the discrimination occurred. Oh, I see. Your Honor, I'm not 100 percent sure, but I think probably the answer is no to that question. Okay. Go ahead. And if I'm mistaken about that, we'll correct that later. Just briefly with respect to the location safe harbor, you know, I think the language of the statute is plain here. When Congress added the federal government or included the federal government in Title VII in 1972, it did not simply amend the definition of employer to add the United States government. That's what it did when it added states to Title VII. It chose a different path. It had a separate subsection, 2000E-16, which applied to the federal government. And that provision incorporated by reference specific provisions of preexisting Title VII that Congress wanted to apply to the federal government. And 2000E-2H is not one of those provisions. And so if you apply a plain language analysis, it's clear that this location safe harbor and the other provisions of subsection H do not apply when the federal government is the employer. Now, the government sort of makes two types of arguments in response to that. The first is just a bunch of general policy arguments about why they think this doesn't make sense. They, quote, dictate in various cases. Does it rely on Supreme Court authority which suggests that these provisions, the safe harbor provisions, are defining the offense and that for purposes of determining federal government liability, we have to look at them because they define the offense? Well, those cases, I don't believe, are in the context of federal employment. And I think that sort of, when the issue really wasn't teed up at the question of whether this applied here, it's beyond, our position is it's simply illogical to say that 2000E-2H defines the offense when it's specifically limited to circumstances where, or defense applicable to, or an action against an employer when the United States government is not the employer. Well, if we were to conclude that it does define the offense, then would you lose? If you, I think if you were to, I think that would not be enough unless you took the second step of saying that it defines the offense with respect to the, or circumstances when the United States government is the employer. If the court did that, then certainly we would lose. We also think- Just on disparate impact. Just on disparate impact, that's right. This defense is only available as a disparate impact issue. We also think that this court's Cartagena case is not binding precedent, as we outlined in our briefs, really for two reasons. First of all, the issue was not briefed or argued. That is the question of whether the safe harbor defense applies, or safe harbor language applies to the United States' employer was not briefed or argued by this case. And we believe it was dicta in those circumstances where the court had already rejected the plaintiff and failed to establish a prima facie case, and the court then assumed even if the plaintiff had, the plaintiff would lose on this alternative ground of one of the defenses in 2H. So we think it's dicta there. I'd like to reserve a couple of minutes for rebuttal, but just briefly talk about- We're going to take your entire argument now. Okay. Thank you. Talk about the Fornero case and why that doesn't preclude the plaintiff's argument here. And that is that the plaintiffs, in filing their retirement claims, understood the lesson of cases like Fornero and the district court case with very similar issues in Cruz and Mitsuo, and that's because we followed the exhaustion procedures that the plaintiffs did not do in the Fornero case. Fornero, they went right to district court, and they said that the APA's waiver of sovereign immunity allowed them to do so, and the D.C. Circuit, then or now Chief Justice Roberts, rejected that. And learning that lesson, we exhausted our remedies, assuming the court agrees with us. We went and had informal counseling. We filed a formal complaint. So we followed the CSRA procedures in their entirety, and so we did not commit the sin, if you will, that the plaintiffs did in Fornero, which knocked them out. The question in Fornero was the failure to follow those procedures. And so we think that the Fornero case and cases like that don't apply here and don't knock out our CSRA retirement claims. But it's kind of bizarre that you should be able to take those to the district court instead of going to the NACB and several sorts of plaintiffs. Well, CSRA establishes a relatively Byzantine exhaustion procedure that varies depending on the nature of the claims that you are asserting. And part of the problem is a lot of the cases the government relies on are not mixed claim cases. If you just have a retirement claim, there's no question that you've got to follow a different exhaustion route than we followed here. But this was a mixed case with discrimination claims. Now, the government also suggests, well, if the court affirms, for example, the dismissal of the two discrimination claims, the court says, well, it's no longer a mixed case and we had to follow those other routes. And we just think that that's wrong. Subject matter jurisdiction is determined at the moment a case is filed in federal court with the exception of mootness, which can arise later. But otherwise, subject matter jurisdiction is decided at the time of filing. And therefore, at the time of filing, there were discrimination claims in this case and therefore it was a valid mixed case. This is not a situation, there is authority that suggests if the discrimination claims were tacked on as a sham or if they were frivolous, that that couldn't establish federal jurisdiction. But that's not the case here. The government doesn't allege, the government wants the claims dismissed, but they don't allege that they were frivolous, that they were shams. And therefore, even if the court dismisses the two discrimination claims, the disparate treatment claim and the adverse impact claim, that that would still be a mixed case that can stay in federal court and that's what the circuits have held. The last point I'll make relates to the question, the government says even if it's a proper mixed case, we can only bring our discrimination claims to district court. We had to bring our retirement claims through the MSPB and they relied most recently in a 28-J submission, they rely on a recent Ninth Circuit case. You know, the Ninth Circuit is out by itself, even if that case is factually and procedurally on par here. The Ninth Circuit is out by itself on that question. Numerous other circuits, the Fourth Circuit, the D.C. Circuit, the Sixth Circuit, and the Eleventh Circuit have all held that, under the plain language of 7702E1A, that when you are bringing the case to district court, you bring the entire case. And I've rejected the government's argument that the case must be split at that point with the retirement claims sent to the MSPB and the discrimination claims can stick in there. Is there anything else that you wanted to cover with us that you could do briefly, or are you good? I think I'm good, Your Honor. Okay. Thank you. Thank you. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent Applebee's United I would like to respond to, if I could, to all of the points that counsel made, starting with Judge Dyke's question about, just as an initial matter, whether they've even alleged a mixed case, which they haven't, because you need to have an action that's appealable to the MSPB. Here, for their retirement claims to be appealable to the MSPB, they need to get not just an initial decision from OPM's retirement services, but then they must seek reconsideration and get what's known as a final decision. And we've set forth the regulations in our brief, and the Cruz Court, in one of the previous punitive class actions on this subject, that was one of the grounds for the Cruz Court's dismissal of the plaintiff's retirement. Did they get an initial decision here from OPM on the non-disclosure? They certainly have not pled that they did. What they have in their complaint is that they just, the allegation was that they sent documents, all these documents to OPM, and didn't get, and OPM didn't rule on them. What they're saying, as I understand it, is that they didn't get a decision on the non-discrimination claims from the OPM, and that under those circumstances, having agency in silence, they were entitled to appeal the inaction. They, but then I think they would have had to plead that they actually did submit the proper request for reconsideration from OPM, and in any event, even if their allegation is they tried to do this and didn't, they haven't adequately pled it, and it's their burden to show jurisdiction, but even assuming arguendo they had, and this was all in the complaint, they still do not, cannot assert those claims in district court because they didn't go to the MSPB. The MS, it was necessary. Yeah, but that seems to me that's problematic, because if this were an adverse action case, you'd have to agree that they could take the claim to district court, right? Your Honor, we submit that under PER, and in this case... No, wait, wait, wait. Try to answer my question. Okay, in an adverse action case, some circuits have held that yes, if you're, if... And the description of the process in Faulkner in the Supreme Court recognizes you can take those claims to the district court, right? Right, because there are some claims where the same, the basis for the discrimination claim and the CSRA claim is the same. Okay, but so what's the difference between an adverse action claim and a retirement claim? What in the statutory language suggests that you have to take the retirement claim to the MSPB, whereas you don't have to take the adverse action claim to the MSPB? This is the Bornero case, which now Chief Justice Roberts authored, is, gives a very thorough guide to why, specifically with respect to retirement claims, you do have to go to the MSPB, because Congress... But it's not talking about a mixed case, right? That case was not a mixed case, but it is talking about the exclusive forum for retirement claims. Well, everybody agrees there's an exclusive jurisdiction in the MSPB if you bring it as a separate retirement claim as opposed to as part of a mixed case. The question is, when it's part of a mixed case, what's the difference between an adverse action claim and a retirement claim? The adverse action claim can go to district court. You don't have to go to the MSPB. Why is the retirement claim different? The difference is that you have statutory provisions. For example, 5 U.S.C. 8461 and 8347, which are about, which set forth that OPM office shall adjudicate all claims under the provisions of this chapter. So these have to be channeled through OPM, which certainly doesn't hear all adverse action claims. There are also adverse actions, as Klochner sets forth, that are directly appealable to the MSPB. If any of these plaintiffs have been terminated and we're challenging their termination, that's an action that's directly appealable to the MSPB. Here, in contrast, you have this exclusive statutory scheme where Congress has made clear that these types of claims have to be channeled through OPM first, then the MSPB. And that's the only... And where does Congress make that clear in a mixed case? Well, the mixed case provision doesn't overcome, and I would refer you to the Kerr decision, because it's very similar with respect to the Whistleblower Protection Act provisions. As the Court there said, when it talks about going to the agency in the mixed case jurisdictional provision of the CSRA, it talks about bringing a matter before the agency. Here, the EEO offices of agencies and the EEOC do not have jurisdiction over these retirement claims. We cited some EEOC decisions in our brief, saying that these are collateral attacks on retirement, and those need to be brought in the proper forum. That, again, is very different from someone who just comes in and says, I have a mixed case because you discriminated against me under Title VII, and I was terminated. This discrimination led to my termination, which is appealable directly to the MSPB. The EEOC can adjudicate that. It doesn't have to be appealed directly to the MSPB. That does not. Here, that doesn't mean that the discrimination claims have to be appealed to the MSPB, but if plaintiffs wanted to preserve their retirement claims, those needed to go to the MSPB and to have the mixed case jurisdictional provisions come into play, because the CSRA itself, which those mixed case provisions are part of, makes clear how you exhaust a retirement claim. So, we submit that the district court correctly dismisses claims for lack of jurisdiction. It could have done so on other bases as well, including that it properly dismissed the Title VII claims, which on the face of the complaint don't state a claim because of the safe harbor provision, which is fully applicable to the federal government, and because the court properly did not even need to get to whether the complaint stated a claim for disparate treatment, because that was not exhausted. And even if it had been, the complaint doesn't satisfy pleading standards. And we also, we will note that the plaintiffs here brought their claims under Title VII and the APA. They're retirement claims they attempted to bring under the APA, not the CSRA itself, and that is, again, yet another attempt to avoid exclusive federal circuit jurisdiction over retirement claims, because those APA claims, as Fornero makes clear, as Elgin makes clear, those are precluded by the CSRA. So, unless they can show that they have... That's right. Though we think PER, if you just substitute retirement for whistleblower protection, that is the exact right holding here, because PER analyzed it both under the CSRA, mixed case specific jurisdiction, and also analyzed it under 1331 and found no jurisdiction. So, and again, we submit that the court need not even get to that point, because the plaintiffs haven't adequately led an appealable action to the MSPB. So, if the court has any further questions, I'd be happy to address them. If not, we rest on our feet. All right. Thank you. Thank you very much.